UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD J. RANDALL,

Plaintiff,

v.

KALEIDA HEALTH,

Defendant.

**DECISION AND ORDER**
08-CV-925S

## I. INTRODUCTION

Plaintiff Richard J. Randall commenced this action in December 2008 asserting claims for employment discrimination based on age in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621 *et seq.*, and New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq*. Pending before this Court is Defendant Kaleida Health's Motion for Summary Judgment. For the reasons discussed below, this Court finds the matter fully briefed and oral argument unnecessary, and concludes that Defendant's motion should be granted.

## II. FACTUAL BACKGROUND

Plaintiff was employed by Defendant from October 1998 until February 2, 2007. (Deposition of Plaintiff Richard J. Randall, Docket Nos. 21-3 and 29-2, at 26; Declaration of Denise Martin, Docket No. 17 ¶ 8). During that time, he worked as an employee relations specialist and then as a recruiter (Pl's Dep. at 32), and at all times was an at-will employee with no written contract (Id. at 139). On two separate occasions Plaintiff also served as the interim director of corporate employment for Defendant, the first occasion being for approximately five months in the beginning of 2001. (Pl's Dep. at 32-33). Plaintiff

was asked at that time if he had any interest in staying on as director, but Plaintiff did not "think the function of corporate human resources was funded properly," such that no incoming director could be effective, and therefore he did not want to take the job. (Pl's Dep. at 34, 36). After his second term as interim director in the beginning of 2003, Plaintiff still had no interest in keeping the position permanently because "nothing really had changed." (Pl's Dep. at 32-33, 37-38). Plaintiff returned to his full-time recruitment position. (Pl's Dep. at 38-39).

In the summer of 2004, Plaintiff went from full time to part time employment. (Pl's Dep. at 51-52). According to Plaintiff, he volunteered to reduce his hours to help the department in light of Defendant's financial problems at the time. (Pl's Dep. at 51-52). This reduction in time would also allow Plaintiff to spend time that summer assisting his recently divorced daughter with childcare. (Pl's Dep. at 51-52, 54, 69). When Plaintiff made this arrangement with Brenda Basher, the then-director of corporate employment, "[t]he understanding was it would be a temporary move and [Plaintiff] would go back at some point to full time," although this agreement was never reduced to writing. (Pl's Dep. at 52). Plaintiff continued to work part time until his termination in February 2007. (Pl's Dep. at 93). When he became eligible in 2006, at age 62, Plaintiff also started to receive Social Security benefits at a reduced rate. (Complaint, Docket No. 1, ¶ 4; Pl's Dep. at 57-58).

Plaintiff requested at some point that he be given the title of Senior Recruiter, which he explains was not a substantively different position but would have provided recognition and a slight pay increase. (Pl's Dep. at 50-51, 67). Basher responded that "she would have to think about it because she didn't know whether a part-timer could be a senior recruiter." (Pl's Dep. at 50-51, 67-68). Plaintiff did not request full time employment again

in light of Basher's response because "[t]here was no question of that happening. It was already decided there wasn't enough money." (Pl's Dep. at 67-68). "[T]here was some turnover of recruiters" while he was working part time, and Plaintiff would have known if there was a full time recruiter position open for which he could have applied. (Pl's Dep. at 93). Plaintiff did not recall if he expressed an interest in returning to full time work when a replacement for a full time recruiter became necessary, and Nicole Peracciny was brought in to fill the position (Pl's Dep. at 70-71; see Docket No. 21-5 at 27).

Valerie DeBerry was hired by Defendant in June 2006 as director of diversity, a position created by then-senior vice president of human resources David Whipple. (Deposition of Valerie DeBerry, Docket No. 21-4, at 23-24, 26; Deposition of David Whipple, Docket No. 21-4, at 24-25). In August 2006, DeBerry also took on the additional role of director of corporate employment. (DeBerry Dep. at 23-24, 26, 35). The duties of this newly combined position included supervision of nurse recruiting, which DeBerry had not anticipated, and DeBerry determined that restructuring might prove more effective due to the expected increased workload. (DeBerry Dep. at 32-33). She therefore recommended to Whipple that two part-time recruiting positions be eliminated to create a full-time manager position while remaining as cost neutral as possible. (DeBerry Dep. at 33-34, 38). Whipple approved the decision (Whipple Dep. at 43), and DeBerry eliminated Plaintiff's part-time position as well as another recently-vacated part time recruiter position. (DeBerry Dep. at 34). DeBerry testified at her deposition that, to her knowledge, there were no "other part-time recruiters in the department at that time." (DeBerry Dep. at 38, 45-46).

Plaintiff was informed on February 2, 2007, that his position was being eliminated

in order to reallocate those funds to the new position of recruiting manager. (Pl's Dep. at 122; Affidavit of Plaintiff Richard J. Randall, Docket No. 29, ¶ 53). Plaintiff had "never heard the title of recruiting manager, so I said, gee, I wish I would have known about that because I would have applied. And [DeBerry] really didn't answer. She looked down and didn't say anything like I didn't say it." (Pl's Dep. at 123-124). DeBerry apologized for the timing of the termination, right before Plaintiff's vacation, but said "she had to do it then because [Plaintiff] had to be gone before the posting could go up." (Pl's Dep. at 123). Plaintiff could "only surmise she didn't want me applying for it." (Pl's Dep. at 123). Plaintiff was 62 at the time of termination. (Complaint at 4; Docket No. 29-4 at 55). An offer for the position of recruiting manager was subsequently made to Reggie Clark on March 19, 2007, and Clark began work in April of that year. (DeBerry Dep. at 49; Deposition of Reggie Clark, Docket Nos. 21-4 and 29-4, at 12).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in May 2007 alleging that he was discriminated against due to his age. (Docket No. 29-4 at 55). He specified therein that at the time of his termination:

> There were two other part-time employees who were not similarly laid off. I was the oldest and most experienced Recruiter in the department. I had nothing but good evaluations and I twice served as the Director of Employment on an interim basis. Since the new Director of Human Resources started in January 2006, [Defendant] has demonstrated a pattern of getting rid of older employees in the department.

(Docket No. 29-4 at 55). Defendant denied the allegation of discrimination (Docket No. 29-3 at 13-20). The EEOC determined that Plaintiff had been discharged and denied consideration for the recruiting manager position based on his age in violation of the ADEA. (Docket No. 29-4 at 58-59). In reaching this determination, the EEOC relied on Plaintiff's

"testimony that he was never informed of the new position until after he was terminated, and he absolutely would have taken a full-time position if it meant keeping his job, but [Defendant] never gave him the opportunity to even be considered for the job." (Docket No. 29-4 at 58). Although Defendant disagreed with the determination, and continued to assert that no discrimination occurred, Defendant made an "unconditional offer of employment" to Plaintiff of a position substantially equivalent to the one from which he was terminated "without prejudice to [Plaintiff's] right to continue to pursue his claim of discrimination." (Docket No. 21-2 at 2-3 [July 23, 3008 letter from Defendant's counsel to the EEOC]). This offer was not accepted by Plaintiff, who avers in the present litigation that he never received this letter and it was never conveyed to him by the EEOC that the offer was unconditional. (Pl's Aff. ¶ 75). A Notice of Right to Sue was mailed to Plaintiff from the EEOC on September 17, 2008. (Docket No. 29-4 at 64).

Plaintiff commenced the instant action on December 17, 2008, alleging five causes of action: (1) wrongful discrimination on the basis of age and creation of a hostile work environment in violation of the ADEA; (2) intentional age discrimination and the creation of a hostile work environment in violation of New York State Human Rights Law; (3) intentional interference with prospective economic advantage; (4) breach of the covenant of good faith and fair dealing with respect to Plaintiff's "employment contract;" and (5)[1] seeking injunctive relief enjoining Defendant from engaging in "illegal acts" to "harm Plaintiff, destroy his professional and personal reputation and damage Plaintiff emotionally, psychologically and economically." (Complaint at 10-13). The parties have conducted

[1]The last cause of action is improperly denominated the "sixth cause of action," however, there are only five.

discovery, and Defendant now moves for summary judgment dismissing the Complaint.[2]

## III. DISCUSSION

Generally, summary judgment is appropriate, even in a discrimination case, where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), (internal quotation marks omitted), cert denied 540 U.S. 811 (2003); see FED.R.CIV.P. 56 (a), (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock 224 F.3d at 41, quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir.2003).

At the outset it must be noted that Plaintiff has abandoned his claims regarding hostile work environment, intentional interference with prospective economic advantage, and breach of the covenant of good faith and fair dealing. (Pl's Mem. of Law in Opp'n,

[2]Defendant has submitted in support of its motion (Docket No. 15) the Declarations of Sarah E. Tollner, Esq. (Docket No. 16), Denise Martin (Docket No. 17), Mary Lou Klee (Docket No. 18), Theo Pappas (Docket No. 19); Defendant's Statement of Undisputed Material Facts (Docket No. 20); an Appendix attached to which are Exhibits A-N (Docket No. 21); and a supporting Memorandum of Law (Docket No. 22). Plaintiff responded with an opposing Memorandum of Law (Docket No. 27); Plaintiff's Opposing Statement of Undisputed Material Facts (Docket No. 28); the Affidavit of Plaintiff Richard J. Randall, attached to which is an Appendix with Exhibits A-V (Docket No. 29). Defendant also submitted a reply Memorandum of Law (Docket No. 30), a Counterstatement of Material Facts (Docket No. 31), and a reply Declaration of Tollner, Esq. (Docket No. 32).

Docket No. 27, at 1 n1). Remaining are his claims of age discrimination and his related request for injunctive relief. In both ADEA and New York State Human Rights Law discrimination cases where, as here, there is no direct evidence of discriminatory conduct, the three-part burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) is applied to determine whether summary judgment is appropriate. See Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009); Weinstock, 224 F.3d at 42 n 1.[3] Initially, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) plaintiff was at least 40 years of age at the relevant time; (2) plaintiff's job performance was satisfactory; (3) plaintiff suffered an adverse employment action such as termination; and (4) the circumstances of that adverse employment action give rise to an inference of age discrimination. Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997); see Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000), cert denied 530 U.S. 1261 (2000)(describing a plaintiff's initial burden as minimal). Once a plaintiff has met this initial de minimus burden of proof, the burden shifts to the defendant to rebut the prima facie case by articulating a legitimate, non-discriminatory reason which, if believed by the trier of fact, would support a determination that unlawful discrimination was not the but-for cause of the adverse employment action. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010); see Gross v. FBL Finanical Servs., Inc., 557 U.S. 167, 129 S.Ct. 2343, 2350-2351, 174 L.Ed.2d 119 (2009)(unlike Title VII actions, a plaintiff bears the burden on an ADEA claim of proving

---

[3]Compare with Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 277-278 (2d Cir. 2009)(claims under New York *City* Human Rights Law must be reviewed independently and more liberally than federal and *state* counterparts).

that "age was the 'but-for' cause" of the challenged action); Bickerstaff v. Vassar College, 196 F.3d 435, 446 (2d Cir. 1999), cert denied 530 U.S. 1242 (2000)(noting that this burden is also not a demanding one, as the burden of persuasion always remains with a plaintiff).

Here, the parties do not dispute that Plaintiff was a member of a protected class, that he was qualified for his job as recruiter, or that the elimination of his position constituted an adverse employment action. With respect to the last requirement, even assuming arguendo[4] that the circumstances of his termination raised an inference of age discrimination, Defendant has articulated a legitimate, non-discriminatory reason for the elimination of Plaintiff's job. Defendant submitted evidence that plaintiff's part-time position was eliminated along with another vacant part time position in order to allow for the creation of a new full time management position without an adverse effect on the departmental budget. (DeBerry Dep. at 24, 26, 32-35, 38; Whipple Dep. at 29). DeBerry testified that the creation of the new position was necessary for effective management of the department. (DeBerry Dep. at 32-33). Defendant also submitted evidence that, prior to his termination, Plaintiff had voluntarily reduced his hours to part time, (Pl's Dep. at 51-51, 54, 69, 93), and on at least two occasions had turned down management opportunities. (Id. at 34, 36-38).

"Upon the defendant's articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock, 224 F.3d at 42. A plaintiff must then

[4]"Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. [This C]ourt has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)(internal quotation marks omitted).

"come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Id. Further, it is not enough that a plaintiff produces some evidence of discrimination, rather, in order to survive a motion for summary judgment, a plaintiff must not only present sufficient evidence to support a rational determination by a trier of fact that the purported non-discriminatory reason articulated by the defendant was false, but also evidence upon which a trier of fact may reasonably believe plaintiff's assertion that age was the but-for cause of his termination. Weinstock, 224 F.3d at 42, citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); see Gross, 129 S.Ct. at 2350-2351. "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Weinstock, 224 F.3d at 42. If, instead, "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination ha[s] occurred," then the defendant is entitled to summary judgment. Reese v. Sanderson Plubming Prods. Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Plaintiff initially attacks Defendant's proffered non-discriminatory reason by arguing that, at the time of his termination, there were two other part-time employees in the department whose positions could have been eliminated. (Pl's Aff. ¶ 36; Pl's Dep. at 119). Specifically, there was one part time administrative assistant and one part time "Employment Specialist," both of whom were younger than Plaintiff. (Pl's Aff. ¶ 36, citing Docket No. 29-3 at 4-5 (Def's Opp'n to Pl's EEOC Charge)). There is no evidence in the record from which to conclude that the part time administrative position was comparable, either in duties or in pay, to Plaintiff's position. see McGuiness v. Lincoln Hall, 263 F.3d 49,

53-54 (2d Cir. 2001)(in order to show disparate treatment, a plaintiff must demonstrate that the compared employee is similarly situated in all material respects); Kearney v. ABN AMRO, Inc., 738 F.Supp.2d 419, 426 (S.D.N.Y. 2010)(same). Further, the fact that Plaintiff was discharged while the younger Employment Specialist, which Plaintiff describes as an internal recruiter[5] (Pl's Aff. ¶ 36), was not may be sufficient to raise a prima facie inference of discrimination; it is not, without more, sufficient to defeat a properly supported motion for summary judgment. See Viola v. Philips Med. Sys. of N. America, 42 F.3d 712, 718 (2d Cir. 1994). Similarly, the fact that Defendant hired two additional employees within six months of Plaintiff's termination is of no moment where the first, Nicole Stenhouse, was hired to replace a recruiter who had voluntarily resigned after Plaintiff's termination. (Affidavit of Mary Lou Klee, Docket No. 18 ¶ 21). According to Defendant, the second hire, Rachel Mancone, was a part time recruiting assistant college intern whose duties were largely administrative. (Klee Aff. ¶¶ 21-23). Plaintiff disputes Mancone's status as an intern and asserts that she was in fact hired as a part time recruiter, the same position from which he was terminated. (Pl's Statement of Undisputed Facts ¶ 20). Plaintiff himself submitted evidence, however, that Marcone was a current graduate student who was offered only a temporary position which was paid hourly, not salaried (Docket No. 29-4 at 42 (Marcone Offer Letter), 53 (Marcone resume); Clark Dep. at 24-26).

Further, although the addition of an employee following a dismissal based upon budgetary reasons may, "*in conjunction with other evidence*," establish an inference of

---

[5]Judging by Plaintiff's own employment history, however, the position of Employment Specialist is a precursor to the position of Recruiter, (Pl's Aff. ¶ 43), and therefore arguably one involving lesser duties and likely compensation. (see McGuiness, 263 F.3d at 53-54). Plaintiff appears to concede as much in his Memorandum of Law, wherein he admits that he "was the only part-time Recruiter at the time his job was eliminated." (Pl's Mem. of Law in Opp'n at 23).

pretextual motive, Viola, 42 F.3d at 718 (emphasis added), this "does not in the end carry the burden [Plaintiff] bears of showing he was treated adversely for discriminatory reasons." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2001), cert denied 534 U.S. 951 (2001). Here, Plaintiff has failed to support his claim with "some hard evidence showing that [his] version of the events[, i.e. that he was discriminated against because of his age,] is not wholly fanciful." Jeffreys v. City of New York, 426 F3d 549, 554 (2d Cir. 2005). He asserted at his deposition that the arrival of Whipple and DeBerry "changed the culture quite a bit of the department," however, he also testified that neither Whipple or DeBerry made any age-based comments (Pl's Dep. at 60, 113-114), nor was he the subject of insulting behavior (Id. at 133). Although he alleged in his complaint that there was a pattern of age-based discrimination leading to the resignations of Brenda Basher, Theo Pappas and Kathy Jackson, (Complaint ¶¶ 20-24), Plaintiff does not dispute Pappas' statements that she resigned voluntarily and was not the subject of discrimination (Affidavit of Theo Papas, Docket No. 19 ¶¶ 4-6, 11-16), nor does he offer any evidence with respect to other persons against whom Defendant allegedly discriminated. When asked how "Whipple pressured older employees to resign," Plaintiff answered "just making life hard for them." (Pl's Dep. at 110). A claim of discrimination cannot be substantiated by such conclusory or unsubstantiated allegations. Jeffreys, 426 F.3d at 554.

Plaintiff further argues that discrimination based on age can be inferred from Defendant's failure to make him a senior recruiter and its failure to offer him either the new recruiting manager job or "the opportunity to seek the position." (Complaint ¶¶ 30-31; Pl's Aff. ¶¶ 46, 55-57). In order to succeed under a theory of discrimination based upon

Defendant's failure to promote him, Plaintiff must show that "he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998)(noting that to hold otherwise would unfairly burden employers with the responsibility of keeping track of not only who actually applied, but those persons who may have generally expressed an interest). Contrary to Plaintiff's contention, it is therefore not sufficient that he "was open to advancement and had consistently expressed a desire for same." (Pl's Mem. of Law in Opp'n at 24). With respect to the senior recruiter title, on the one occasion when Plaintiff specifically requested this promotion, his supervisor stated only that she was unsure whether a part time employee could be a senior recruiter. (Pl's Dep. at 50-51, 67-68). Thus, according to Plaintiff's own testimony, he was never "rejected" from the senior recruiter position. Brown, 163 F.3d at 710. Further, he admitted that he never followed up on his request, either by asking to be returned to full time status or requesting the promotion again after he became aware that another part time recruiter received that designation. (Pl's Dep. at 67-68, 71-73). Indeed, Plaintiff testified that when Pappas left her position as senior recruiter, he could "have simply made it known" that he wanted the job, (Pl's Dep. at 91-92), yet there is no evidence that he did so.

Plaintiff argues the he can nonetheless establish his failure to promote claim with respect to the recruiting manager position because it would be unrealistic to require him to show that he applied for a job that was never posted prior to his termination. Mauro v. S. New England Telecomm., Inc., 208 F.3d 384, 387 (2d Cir. 2000) (where plaintiff expressed interest in a particular class of positions, but was unaware of specific opening,

unrealistic to require plaintiff to show application). This argument is without merit where Plaintiff was expressly informed of the Recruiting Manager position at the time his part time position was eliminated, and although DeBerry did not respond when he asked to be considered, Plaintiff was aware of how to check for open positions and apply as an external applicant. (Pl's Dep. at 122-124, 126-127). Notably, the position was not filled until approximately two months after Plaintiff's termination. (DeBerry Dep. at 49; Clark Dep. at 12). Even assuming, as this Court must, that Plaintiff never informed DeBerry that he did not wish to return to full time work, see Dallas Aerospace, Inc., 352 F.3d at 780, there is little evidence in the record to support Plaintiff's assertion that his application would have been futile. See Jeffreys, 427 F.3d at 554 (mere scintilla of evidence insufficient to defeat motion for summary judgment). What little evidence there is speaks to an adversarial or "cool" relationship between Plaintiff and Whipple and DeBerry which, according to Plaintiff's deposition testimony, appears to be a reaction to his questioning of their qualifications and authority. (Pl's Dep. at 78-79, 84-85). Although this may raise a question regarding the propriety of the termination, it does not raise an inference of age discrimination. Further, Defendant's failure to consider Plaintiff for the new position unprompted was not illogical, such that pretext may be inferred, where at the time of his termination Plaintiff had twice turned down a permanent management position when approached (Pl's Dep. at 34, 36-38), voluntarily reduced his hours, regardless of reason, from full to part time (Id. at 51-52, 54, 69, 93), never in two years requested to be reinstated to full time employment, despite his assertion that his part time status was only supposed to be temporary (Id. at 56, 93), and never sought open positions such as the director of diversity or Pappas' vacated senior recruiter position (Id. at 73-74, 95). Finally,

because the record reflects that Plaintiff could have applied for the job as an external application, but declined to do so, the fact that a younger, less experienced applicant was ultimately awarded the position fails to raise an inference of discrimination.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff has failed to raise a material question of fact whether age discrimination was the but-for cause of his termination, and as such, there is no basis for this Court to consider the injunctive relief sought in Plaintiff's only other remaining claim. Defendant's motion for summary judgment is granted in its entirety and the complaint is dismissed.

## V. ORDERS

IT HEREBY IS ORDERED that Defendant's Motion for Summary Judgment (Docket No. 15) is GRANTED in its entirety and the complaint is dismissed;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: February 5, 2012
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Judge